Robinson, J.
 

 This is an error proceeding, brought to obtain a reversal of an order of the
 
 *305
 
 Public Utilities Commission of Ohio in case No. 4352, wherein the American Bolling Mill Company was the complainant and the plaintiffs in error were defendants. It was a complaint before the Public Utilities Commission against the existing freight rate on pig iron from South Columbus to Middletown, Ohio. The commission made a final order, reducing the rate from $1.85 to $1.70 per ton. An application for rehearing was overruled.
 

 The complainant’s evidence consisted of 14 exhibits, identified and commented upon by the witness Vigor, who qualified as an expert, and who was traffic manager of the complainant. His evidence in substance was of the character, quantity, and regularity of the shipments of pig iron between South Columbus and Middletown, and a comparison of the existing freight rate on pig iron between South Columbus and Middletown with the freight rates on pig iron between some 14 points in Ohio where there were considerable movements of pig iron freight from some 26 blast furnaces, and especially a comparison with the freight rate on pig iron between Cleveland and Canton, which had been fixed by an order of the Public Utilities Commission of Ohio; also a comparison with interstate freight rates upon pig iron between the same 14 points in Ohio and some 6 points in Pennsylvania, which comparison disclosed that both the ton mile and car mile earnings on pig iron freight under existing rates over the respective routes of the several defendants between South Columbus and Middletown were substantially higher than the ton mile and car mile earnings on pig iron freight under existing rates between the several points of
 
 *306
 
 comparison in Ohio and in Ohio and Pennsylvania.
 

 The exhibits also detailed a comparison of pig iron rates between the aforementioned several points with class 6 freight rates, which also disclosed that the existing pig iron freight rate between South Columbus and Middletown bore a substantially higher proportion to class 6 rates than did the pig iron freight rate between the other several points in Ohio and the other several points between Ohio and Pennsylvania; class 6 being the freight rate class in which pig iron rates would fall, were it not for the fact that a commodity rate is made thereon.
 

 As against this evidence the defendants, plaintiffs in error here, offered several officials of their respective companies, who testified, as experts, to the effect that the existing rate between South Columbus and Middletown was reasonable; also a pig iron freight rate statement, showing rates between various points in Ohio, Indiana, and Pennsylvania.
 

 Upon cross-examination of the defendants’ witnesses, it was established that the shipment of pig iron freight from South Columbus to Middletown was an ordinary, normal freight shipment. There was no evidence offered either by the complainant or by the defendants upon the subject of whether the operating conditions of the shipments between the various points of comparison were normal and ordinary, except upon cross-examination the witness Vigor testified:
 

 “I would not say that the conditions governing the making of rates are different in that district (referring to the Cleveland and Youngstown dis
 
 *307
 
 trict) than they are between Columbus and Middle-town.”
 

 It is the contention of the defendants that the complainant failed to prove that the operating conditions surrounding the pig iron shipments between the points used for comparison were substantially the same as the operating conditions surrounding the shipments of pig iron between South Columbus and Middletown, and that, therefore, there was no evidence on behalf of the complainant justifying the judgment of the commission that the existing rates were unreasonable and unlawful, and that they, having qualified certain of their officials as experts, who testified as such that the rates were not unreasonable, sustained the burden of proof, and therefore the commission was in error in finding the existing rates unreasonable and unlawful.
 

 Section 528, General Code, casts upon the common carrier the burden of proof at any hearing involving a rate increased after January 15, 1915. The record in this case discloses that this particular rate had been increased after that period.
 

 While it cannot be claimed that the section casts upon the defendants any obligation to supply evidence to vitalize the evidence offered by the complainant, it may well be claimed that, where it is shown that the rate complained of is a rate for a movement under ordinary operating conditions and comparison is made with rates of a substantial number of movements of the same kind of freight in the same general territory and necessarily supplying substantially the same markets, a presumption obtains, in the absence of proof to the con
 
 *308
 
 trary, that the operating conditions of such shipments are also ordinary and normal.
 

 While holdings of administrative bodies, such as the Interstate Commerce Commission, do not constitute authority upon which a court may base a conclusion of law, nevertheless, in matters involving regulation of common carriers in the matter of rates, where expert knowledge of the subject is required to draw correct conclusions, the reasoning and holdings of such expert bodies are most helpful. Section 15 of the Interstate Commerce Act (Title 49, Section 15, U. S. Code), is substantially the same as Section 528 of the General Code.
 

 In the case of
 
 Southern Appalachian Coal Operators Ass’n.
 
 v.
 
 Louisville & Nashville Rd. Co.,
 
 83 Interst. Com. Com’n. R. 136, 142, the complainants were making the same objection to the probative value of a comparison of the rates complained of with other rates that the defendant carriers are making here; and, notwithstanding the fact that the burden was- cast upon the carriers, who had omitted to offer evidence that the freight movement conditions at the points of comparison were the same as or similar to the freight movement conditions of the rates complained of, the Interstate Commerce Commission said:
 

 “These comparisons are for the most part unaccompanied by any definite showing as to relative transportation conditions; and complainant contends in substance that they are therefore without any probative value. While they would have been of greater value if fully supported, these comparisons may not be entirely ignored, including, as they
 
 *309
 
 do, many rates from and to points in the same general territory as that here considered where circumstances and conditions surrounding transportation obviously cannot be substantially dissimilar.”
 

 The words “the same general territory” in that case designated a much larger area than the entire area bounded by the furthermost points of complainant’s shipments and comparison shipments in this case.
 

 We are of opinion that where a comparison of a freight rate for a movement of freight, the operating conditions of which are normal and ordinary, is made with a considerable number of freight rates on the same kind of freight between points in the same general territory, the shippers and consumers competing in substantially the same market, no presumption will arise that the operating conditions between the various points of comparison are more favorable and advantageous than normal and ordinary and that the movements are handled at a less expense than normal; but, instead, in the absence of proof to the contrary, the presumption will arise that the operating conditions of such shipments are usual and normal and at the usual, normal expense.
 

 We are also of opinion that mere expressions of judgment by witnesses, testifying as experts, that freight rates are reasonable, do not have such probative value as to outweigh established, concrete facts inconsistent with such expressions of judgment.
 

 Having reached the conclusion that the defendants did not sustain the burden of proof before the
 
 *310
 
 commission, and there being no other evidence upon which the commission could base a rate other than that of comparison, the commission was justified in holding that, by comparison with other freight rates upon the same kind of freight in the same general territory, the existing rate of $1.85 between South Columbus and Middletown is unreasonable, especially in view of the fact that at least one of the rates with which comparison was made was a rate fixed by it after a hearing, which rate, until reversed or revised, must stand as a reasonable and lawful rate. Indeed, the Supreme Court of the United States, in the case of
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 United States,
 
 238 U. S., 1, 35 S. Ct., 696, 59 L. Ed., 1177, has said:
 

 “Giving the widest possible effect to the fact that mere comparison between rates does not necessarily tend to establish the reasonableness of either, it is still true that, when one of many rates is found to be higher than all others, there may arise a presumption that the single rate is high. ’ ’ The rate of $1.26 between Cleveland and Canton was a rate fixed by the Public Utilities Commission in the case of
 
 McKinney Steel Co.
 
 v.
 
 Pennsylvania Rd. Co.,
 
 Public Utilities Commission, docket No. 3469. The commission was entitled and this court is entitled to accept that rate as a reasonable rate for that distance, and, in the absence of any showing that the expense of that movement is less than ordinary and normal, to project that rate, by a proper progression, to 90 miles and apply it to this rate. The commission, however, did not fix as a reasonable and lawful rate between South Columbus and Middletown a rate compar
 
 *311
 
 able to the projection of that rate by any table of progression of which we are advised, but fixed a rate some 30 cents in excess thereof.
 

 This court being of opinion that the Public Utilities Commission of Ohio had sufficient evidence upon which to base its finding that the existing rate between South Columbus and Middletown is unreasonable, its order and finding will be affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Day, Allen, Kinkade and Matthias, JJ., concur.
 

 Jones, J., not participating.